## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEVELAND BROTHERS EQUIPMENT CO., INC., | No. 4:19-CV-01708 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GRIGORIY N. VOROBEY, and GRIGORIY N. VOROBEY, d/b/a GVN TRANSPORT, | |
| Defendants-Third Party Plaintiffs, | |
| v. | |
| MICHAEL A. MILLER. | |
| Third Party Defendant. | |

## MEMORANDUM OPINION

### FEBRUARY 10, 2023

## I.    BACKGROUND

In 2019, Cleveland Brothers Equipment Co., Inc. ("Cleveland Brothers") filed a complaint seeking contribution from Grigoriy N. Vorobey and Grigoriy N. Vorobey d/b/a GVN Transport (collectively "Vorobey"), for sums that Cleveland Brothers paid to settle underlying civil actions filed against Cleveland Brothers in state court (the "Underlying Actions").[1]

---

[1]    Doc. 1.

The Underlying Actions arose from an accident that occurred in August 2016 in the southbound lanes on Route 15 in Tioga County, Pennsylvania (the "Southbound Accident").[2] Shortly before that accident, another accident had occurred in the northbound lanes in the same area on Route 15, wherein a pickup truck with a tow-behind trailer had overturned (the "Northbound Accident").[3] That truck was allegedly being driven by Third Party Defendant Michael A. Miller.[4] For an unexplained reason, the Northbound Accident caused Vorobey to stop his truck in the right lane of the two southbound lanes, which in turn caused a 2016 Chevrolet driven by Timothy Miller to stop, followed by a 2008 Ford driven by Andrew Puhlick—with passenger Harold Whipple—and finally a 2008 Honda driven by Michael McCollum, to also stop their vehicles in the right lane.[5]

At that time, Keith Bryson, a driver for Cleveland Brothers who was operating in his capacity as an employee of Cleveland Brothers, was also traveling in the southbound lanes. At around the time that the vehicles were stopped, Bryson was distracted by a squealing sound emanating from his truck's onboard computer system and did not return his attention to the road in time to avoid colliding with the stopped vehicles.[6] This caused a chain reaction impacting all of the stopped vehicles;

---

[2]   Doc. 51 at 6.
[3]   *Id.*
[4]   Doc. 7 ¶¶ 5, 15-16.
[5]   Doc. 51 at 6.
[6]   *Id.*

McCollum and Whipple were killed in the Southbound Accident, while Puhlick was seriously injured.[7]

As a result of that collision, several of the victims filed suit in state court against Bryson and Cleveland Brothers; Bryson admitted his negligence in contributing to the Southbound Accident.[8] Cleveland Brother thereafter settled all claims in the Underlying Actions but, in the settlements, Cleveland Brothers reserved its right to pursue claims for contribution against Vorobey.[9]

After Cleveland Brother filed its complaint in this matter, Vorobey moved to dismiss the complaint, arguing that Cleveland Brothers was required to bring its claim as a counterclaim in an underlying personal injury action filed by Vorobey against Cleveland Brothers.[10] This Court rejected that assertion, and held that Cleveland Brothers' contribution claim was not a compulsory counterclaim in the action brought by Vorobey, and therefore the claim could proceed here.[11]

Vorobey then filed a motion for summary judgment, arguing that he owed Cleveland Brothers no care of duty and, in any event, any negligence on his part was not a proximate cause of the Southbound Accident.[12] This Court denied the motion for summary judgment, reasoning that Vorobey owed all other drivers a duty of

---

[7]   *Id.*
[8]   *Id.* at 6-7.
[9]   Docs. 1-1, 1-2, 1-3.
[10]   Doc. 8.
[11]   Doc. 19.
[12]   Docs. 41, 42.

reasonable care, and that a jury could reasonably conclude that Vorobey was a proximate cause of the Southbound Accident.[13]

This matter is set for trial in March 2023 and, in accordance with this Court's Scheduling Order, the parties have filed their motions *in limine*. Cleveland Brothers has filed eight motions *in limine*.[14] Vorobey in turn has filed one belated motion *in limine*.[15] As explained in more detail below, Cleveland Brothers' motions *in limine* will be granted in part and denied in part, while Vorobey's motion *in limine* will be denied.

## II.   DISCUSSION

Courts exercise discretion to rule *in limine* on evidentiary issues "in appropriate cases."[16] While motions *in limine* may serve as a useful pretrial tool that enable more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity."[17] "[M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation."[18] Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution

---

[13]   Doc. 51.
[14]   Docs. 74, 76, 78, 80, 82, 84, 86, 88.
[15]   Doc. 121.
[16]   *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).
[17]   *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012).
[18]   *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

of questions of foundation, relevancy, and potential prejudice in proper context."[19]
Specifically, "*pretrial* Rule 403 exclusions should rarely be granted . . . a court
cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes
until it has a full record relevant to the putatively objectionable evidence."[20]
Regardless, "*in limine* rulings are not binding on the trial judge, and the judge may
always change his mind during the course of a trial."[21]

### A.   Cleveland Brothers' Motions *in Limine*

#### 1.   Evidence Related to the Underlying Actions

Cleveland Brothers first argues that Vorobey should be precluded from
introducing evidence that: (1) Vorobey and Third Party Defendant Miller were not
asked to participate in mediation in the Underlying Actions; (2) the plaintiffs in the
Underlying Actions did not name Vorobey as a defendant; (3) Cleveland Brothers
attempted to file a voluntary discontinuance as to Vorobey in the Underlying
Actions; (4) Cleveland Brothers sought in the Underlying Actions to protect from
disclosure its financial information and data; and (5) Vorobey had filed a personal
injury action against Cleveland Brothers, which Cleveland Brothers settled.[22]
Vorobey agrees that it will not seek to introduce evidence of the personal injury

---

[19]   *Leonard v. Stemetech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[20]   *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).
[21]   *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).
[22]   Doc. 75.

action, but responds that the other evidence is admissible, as it will help the jury understand why Vorobey was not a participant in the Underlying Actions.[23]

The Court concludes that Vorobey's proffered evidence is irrelevant to the matters remaining for trial. Under the Federal Rules of Evidence, evidence is relevant "if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence."[24] Vorobey's primary difficulty in establishing that any of the proffered evidence is relevant are the elements for a claim of negligence that Cleveland Brothers must establish to demonstrate Vorobey's liability. To prove negligence, Cleveland Brothers must establish "four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff."[25]

As discussed above, Vorobey first seeks to introduce evidence that Vorobey and Miller were not asked to participate in mediation in the Underlying Actions. That has no relevance to this action; it does not tend to make it more probable that Vorobey did not have a legally recognized duty, did not breach any such duty, or did not cause injury or damages. Nor would that evidence tend to make the amount of damages—in the event of a jury finding liability—more or less certain.

---

[23] Doc. 100.
[24] *Forrest v. Beloit Corp.*, 424 F.3d 344, 355 (3d Cir. 2005) (citing Fed. R. Evid. 401, 402).
[25] *Massaro v. McDonald's Corp.*, 280 A.3d 1028, 1035-36 (Pa. Super. Ct. 2022) (internal quotation marks omitted).

The fact that Vorobey was not named as a direct defendant in the Underlying Actions would likewise have no tendency to establish or disprove any element of negligence. The only possible purpose of this evidence would be to imply to the jury that Vorobey must not have been negligent or he would have been named as a defendant in the Underlying Actions. But that is precisely the question that the jury must decide here. Similarly, the fact that Cleveland Brothers attempted to file a voluntary discontinuance as to Vorobey in the Underlying Actions does nothing to prove or disprove Cleveland Brothers' cause of action but, instead, would again only serve to imply to the jury that Vorobey must not have been negligent or Cleveland Brothers would not have sought Vorobey's voluntary dismissal in the Underlying Actions. Finally, the fact that Cleveland Brothers sought to protect its financial information and data from disclosure has absolutely no bearing on either liability or potential damages here.

Even if the proffered evidence had some marginal relevance, it would remain inadmissible. The Federal Rules of Evidence provide that "relevant evidence may be excluded 'if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" [26] "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit

---

[26] *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019) (quoting Fed. R. Evid. 403 (ellipsis omitted)).

evidence; relevance alone does not ensure its admissibility."[27] The United States Court of Appeals for the Third Circuit has recognized a general "presumption in favor of admission" of relevant evidence, which "requires weighing the maximum reasonable probative force for the offered evidence against the *likely* prejudicial impact of the evidence."[28]

Any marginal relevance offered by the proffered evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, and wasting time. As noted above, the fact that Vorobey was not named as a direct defendant in the Underlying Actions or that Cleveland Brothers attempted to file a voluntary discontinuance as to Vorobey in the Underlying Actions would serve primarily to imply to the jury that Vorobey must not have been negligent in the Southbound Accident. Indeed, Vorobey appears to confirm in his response brief that this is the true motive for proffering such evidence.[29] And the fact that Vorobey and Miller were not asked to participate in mediation in the Underlying Actions and that Cleveland Brothers sought to protect its financial information from disclosure would serve to imply that Cleveland Brothers is perhaps improperly hiding its finances and improperly excluded Vorobey from the relevant events in the Underlying Actions.

---

[27]   *Id.* (internal quotation marks omitted).

[28]   *Id.* (internal quotation marks omitted).

[29]   *See* Doc. 100 at 3 (Vorobey asserting that "[t]he Jury will surely wonder why, if Vorobey is liable for the happening of this accident, was Vorobey not sued by the plaintiffs in those underlying matters . . . [and why] Vorobey did not offer to settle those matters with the injured parties").

And beyond the prejudice, the introduction of such evidence would confuse the issues and waste time, as it would necessarily compel Cleveland Brothers to explain why certain actions were taken, which would potentially spark a trial within a trial on tangential matters that have no, or minimal, relevance to the case. For that reason, the evidence is irrelevant and otherwise inadmissible, and this motion *in limine* will be granted.

### 2.   Walter Guntharp's Expert Testimony

In two separate motions *in limine*, Cleveland Brothers seeks to exclude the testimony of Walter Guntharp—Vorobey's expert witness on liability—on the grounds that he is not qualified to offer his proposed testimony, and that the testimony is not reliable and does not fit this case.[30]

Federal Rules of Evidence 702 and 703 govern the admissibility of expert testimony and set forth certain criteria for admissibility. Expanding upon those Rules, the United States Supreme Court set out the standard for admissibility of expert testimony in *Daubert v. Merrell Dow Pharm., Inc.*[31] The Court in *Daubert* delegated to district courts a "gatekeeping responsibility" under Rule 702, which requires that courts determine at the outset whether an expert witness may "testify to (1) scientific knowledge that (2) will assist the trier of fact."[32] That gate-keeping function demands an assessment of "whether the reasoning or methodology

---

[30]   Docs. 76, 88.
[31]   509 U.S. 579 (1993).
[32]   *Id.* at 592.

underlying the testimony is scientifically valid" as well as "whether that reasoning or methodology properly can be applied to the facts in issue."[33] A district court "exercises more control over experts than over lay witnesses," since "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[34]

Following *Daubert*, the United States Court of Appeals for the Third Circuit cast expert admissibility determinations in light of three basic requirements: (1) qualification; (2) reliability; and (3) fit.[35] The qualification prong demands that the proffered expert possess sufficient "specialized knowledge" to testify as an expert.[36] To satisfy the reliability prong, an expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"[37] The Third Circuit has set forth eight non-exclusive factors that "a district court should take into account" when deciding the reliability of expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to

---

[33] *Id.* at 592-93.
[34] *Id.* at 595 (internal quotation marks omitted).
[35] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994) ("*Paoli II*").
[36] *Id.* at 741.
[37] *Id.* at 742 (*quoting Daubert*, 509 U.S. at 589).

which the method has been put.[38]

With regard to the fit prong, the Third Circuit explained that admissibility "depends . . . on the proffered connection between the scientific research or test result . . . and [the] particular disputed factual issues."[39]

The burden of proof for admissibility of expert testimony falls upon the party that seeks to introduce the evidence.[40] However, as the Third Circuit has emphasized, "[t]he test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology."[41]

> This standard is not intended to be a high one, nor is it to be applied in a manner that requires the plaintiffs to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.[42]

District courts must always be cognizant of the fact that "[t]he analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination."[43]

Judged under these standards, the Court will conditionally certify that

---

[38] *Id.* at 742 n.8.
[39] *Id.* at 743 (internal quotation marks omitted).
[40] *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000).
[41] *Id.* (internal quotation marks omitted).
[42] *Id.* (internal quotation marks omitted).
[43] *Id.* (internal quotation marks omitted).

Guntharp is qualified to offer an opinion as to many aspects of this case, but that some of his more specific opinions must, at the moment, be excluded as they are unreliable or do not fit the case.

### a.    Qualifications

As to Guntharp's qualifications, Cleveland Brothers first argues that Guntharp does not possess the training, education, and experience necessary—based on his lack of publishing credentials, lack of affiliation with the trucking industry, and decades spent away from an active role in safety matters with any trucking company—to opine as to whether Cleveland Brothers breached the operative standard of care with respect to several safety issues.[44] Second, Cleveland Brothers asserts that Guntharp is unqualified to offer any opinion that Bryson had sufficient time to stop his vehicle, since Guntharp has no experience in accident reconstruction, and offers opinions based upon his personal belief rather than any industry standards or practices.[45]

As to the first point, Cleveland Brothers argues that Guntharp lacks the training, education, and experience necessary to offer an opinion as to whether Cleveland Brothers breached the operative standard of care in qualifying Bryson to operate a service truck, monitoring his hours of service, permitting him to drive after

---

[44]   Doc. 77 at 6-10.
[45]   *Id.* at 10-14.

a prior accident without additional safety training or discipline, and in failing to timely fix the onboard computer.[46] The Court disagrees.

Guntharp's curriculum vitae states that he had been involved in the commercial transportation field in various capacities since 1976, primarily as a driver, but also as a safety director for several trucking companies, and a field safety representative for an insurance company.[47] He worked in the latter two positions for approximately nineteen years.[48] For the past twenty-three years, Guntharp has held various positions, including as a safety engineer and safety consultant.[49] In these capacities, Guntharp "provided evaluations of safety programs and operational practices [for] thousands of transportation companies" and "provided management seminars and defensive driving training to these companies."[50]

Based on this experience, it appears that Guntharp has intimate knowledge of the trucking industry, along with safety standards and practices for commercial trucks. This experience likely qualifies Guntharp to opine as to the relevant standard of care regarding the qualification of commercial truck drivers, the monitoring of service hours, requirements for training and discipline after an accident, and requirements for fixing defective equipment in order to safely operate a commercial

---

[46]   Doc. 77 at 6-10.
[47]   Doc. 88-1 at 19.
[48]   *Id.* at 20-21.
[49]   *Id.* at 20.
[50]   *Id.* at 19.

truck.[51]

That having been said, Guntharp's report and curriculum vitae are relatively sparse, and it is possible that, at trial, Guntharp's testimony will reveal a dearth of expertise as to one or more of these specific topics. But, at present, the Court conditionally finds Guntharp qualified to testify to these subjects. The Court will, however, permit Cleveland Brothers to voir dire Guntharp at trial, and may revisit this conclusion at trial upon appropriate motion.

With regard to Cleveland Brothers' assertion that Guntharp lacks the qualifications to opine as to whether Bryson had sufficient time to stop his vehicle, the Court agrees. Guntharp has no qualifications as an accident reconstruction expert, and his opinion does not appear to be based on any identifiable standards or practices or evaluation of the mechanics of the Southbound Accident. Consequently, the Court cannot conclude that Guntharp is qualified to proffer an opinion in this area. Furthermore, while it is possible that one could form an opinion as to whether a fully attentive driver could have stopped prior to striking another vehicle, Guntharp's opinion is bereft of data that would be necessary to reach such a conclusion. For example, there is no information related to numerous factors that could impact the stopping time of Bryson's truck, such as the depth of tread on the

---

[51]   While Guntharp may be sufficiently qualified to testify as to whether it is dangerous to operate a commercial truck that has defective equipment, he is unqualified to testify about whether Cleveland Brothers' efforts to fix the onboard computer system were insufficient, and he offers no qualifications to opine as to what efforts should have been taken to fix that system.

brake pads, the weight of the truck at the time of the accident, or that average reaction time of a truck driver. Absent such information, Guntharp's opinion likewise would not fit this case, and is excluded on that ground as well.

### b.    Reliability and Fit

As to Cleveland Brothers' efforts to exclude or limit portions of Guntharp's opinion on the grounds that these opinions are unreliable or do not fit the case, the Court will grant in part and deny in part that motion.

### i.    Opinions That Vorobey Agrees Should not be Admitted

First, Cleveland Brothers argues that Guntharp may not testify as to Cleveland Brothers' or Bryson's state of mind, and Vorobey agrees not to seek admission of many of the contested opinions, including:

- that drivers who are most in need of safety training do not attend the meetings unless required;

- although some of Bryson's absences from safety meetings may have resulted from work conflicts, it is unlikely that he was unavailable for all the meetings that he missed and it is also unlikely that Bryson would have received all materials and instructions that were provided in the classroom;

- it is unlikely that Bryson would review or digest all safety materials that he received via email;

- it is unusual for a company to continue operating for 28 years without attempting to improve its safety rating;

- Cleveland Brothers continued to operate with the same distain for public safety that it exhibited in 1990;

- Cleveland Brothers training efforts were "halfhearted at best;"[52] and

- Cleveland Brothers failed to properly maintain hours of service records for Bryson and thereby allowed Bryson to operate a company truck when he was potentially fatigued.[53]

Based upon these stipulations, Cleveland Brothers' motion *in limine* will be granted to the extent that it seeks to exclude such testimony at trial.

### ii.   Opinions Regarding Bryson's Conduct Prior to the Southbound Accident

Next, although Cleveland Brothers argues that Guntharp should not be permitted to testify as to Cleveland Brothers' or Bryson's state of mind, Vorobey contends that Guntharp may testify that: (1) Bryson should have been able to diagnose the squealing sound emanating from his onboard computer system without taking his eyes off of the road for an extended time; (2) Bryson's statement that he was distracted while checking his heat gauge is neither logical or consistent with the actions of a professional driver; (3) Bryson decided to ignore traffic ahead of him;

---

[52]   *Compare* Doc. 88 at 5-6, *with* Doc. 95 at 1-2.
[53]   *Compare* Doc. 89 at 11-13, *with* Doc. 95 at 2-3.

and (4) in light of the frequent malfunctions with the onboard computer system, there was "absolutely no logical reason" for Bryson to have focused his attention on the truck gauges instead of immediately checking the computer screen.[54]

As to the first statement regarding the diagnosis of a squealing sound, the Court will conditionally deny Cleveland Brothers' motion. Although it is not apparent from the face of Guntharp's expert report that this opinion is well founded based upon his experience and the facts of this case, it is possible that Guntharp will be able to adequately support this opinion at trial, and the Court is therefore reticent to exclude that opinion at this time. Denial is, however, without prejudice to Cleveland Brothers' ability to reraise this objection at trial should Guntharp fail to properly explain the basis of his opinion.

With regard to the second challenged opinion, the Court will grant in part Cleveland Brothers' motion. There is no apparent basis in record or in Guntharp's expert report for him to opine that it was illogical for Bryson to check the heat gauge of his vehicle when the squealing occurred, and that portion of the opinion may not be presented. However, Guntharp may attempt to explain how such an action was inconsistent with the actions of a professional driver. The Court will therefore conditionally grant the motion as to that portion of Guntharp's opinion, although he may attempt to render that opinion in a slightly different form.

---

[54]   Doc. 95 at 3-7.

With respect to the third statement, the Court will grant Cleveland Brothers' motion. Guntharp points to nothing in the record to support the notion that Bryson actively decided to ignore traffic on the road ahead of him, rather than having simply negligently failed to see such traffic. Guntharp therefore may not state at trial that Bryson made a "decision to ignore traffic ahead," although Guntharp may attempt to rephrase this statement at trial.

The Court will also grant Cleveland Brothers' motion as to the fourth challenged statement. Guntharp provides no support for his unconditional statement that there was "absolutely no logical reason" for Bryson to have focused his attention on the truck gauges instead of immediately checking the onboard computer screen. There could be some logical reason to check the gauges first and, accordingly, Guntharp is prohibited from making this statement at trial, although he again may attempt to rephrase the statement at trial.

### iii. Opinions Allegedly Not Based on Facts in the Record

Cleveland Brothers next contends that several of Guntharp's opinions should be excluded as unreliable because they are not based on facts in the record, specifically that: (1) there is no evidence that Bryson attempted to brake his truck prior to the Southbound Accident; (2) Cleveland Brothers did not have any disciplinary or training program in place and did not discipline Bryson after a 2013 accident; and (3) stopped traffic should have been evident to Bryson based on a

number of factors.[55]

As to the first and second opinions, the Court will grant Cleveland Brothers'
motion. There is no support in the record for the broad and unconditional statements
that Cleveland Brothers did not have any disciplinary or training program in place
and did not discipline Bryson after a 2013 accident, or that there is no evidence that
Bryson attempted to brake his truck prior to the Southbound Accident. To the
contrary, there is at least some evidence in the record refuting those statements.[56] In
the absence of support for Guntharp's statement—and in the presence of
countervailing evidence—these opinions are unreliable and must be excluded.[57]
Guntharp may, however, testify as to what evidence supports a conclusion that
Cleveland Brothers did not have a disciplinary or training program in place and did
not discipline Bryson after a 2013 accident, or that Bryson did not attempt to stop
his truck prior to the Southbound Accident.

With regard to Guntharp's opinion that stopped traffic should have been
evident to Bryson prior to the Southbound Accident, Cleveland Brothers' motion *in
limine* will be denied. Unlike the previous two opinions proffered by Guntharp, there
is some evidence to support the assertion that the stopped traffic should have been
evident to Bryson.[58] Regardless of whether that evidence is particularly strong or

---

[55]  *Id.* at 13-16.
[56]  *See* Doc. 88-1 at 25, 30-34, 38-43, 45, 49-57, 60, 62-79.
[57]  *See Paoli II*, 35 F.3d at 742 (noting that, to be reliable, an expert's opinion cannot be based
"on 'subjective belief or unsupported speculation'" (*quoting Daubert*, 509 U.S. at 589)).
[58]  Doc. 88-1 at 14.

may be undermined by other facts, it is not the Court's place to determine whether Guntharp's opinion is correct. Importantly, this Court is only permitted to make a "preliminary assessment" of Guntharp's testimony, and to determine whether such testimony is "helpful[] to the trier of fact."[59] As the United States Court of Appeals for the Eighth Circuit has explained:

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.[60]

Because Guntharp's opinion that stopped traffic should have been evident to Bryson enjoys some factual support, Guntharp will be permitted to offer this opinion at trial, and Cleveland Brothers' proper mode of recourse is through cross-examination of Guntharp.

### iv.    Opinion Regarding Safety Records and Qualifications

Finally, Cleveland Brothers argues that Guntharp should be precluded from offering opinions as to Cleveland Brothers' and Bryson's safety records and qualifications—specifically that Cleveland Brothers' trucking division addressed only the CDL drivers and ignored the safety of its non-CDL drivers, that Cleveland Brothers' safety rating was subpar, and that its SAFER website had not been updated

---

[59] *United States v. Velasquez*, 64 F.3d 844, 849-50 (3d Cir. 1995) (internal quotation marks omitted).
[60] *First Union Nat. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005).

bi-annually—as those opinions are irrelevant to whether Cleveland Brothers negligently trained Bryson and are unduly prejudicial, and therefore do not fit the case.[61]

With respect to Guntharp's statements that Cleveland Brothers' trucking division addressed only the CDL drivers and ignored the safety of its non-CDL drivers, and that its SAFER website had not been updated bi-annually, such opinions appear to have little, if any, relevance to the question of whether Cleveland Brothers was negligent in training or failing to properly discipline Bryson. The activities of the trucking division, of which Bryson was not an employee, or Cleveland Brothers compliance in updating a website, have no impact on that analysis. Because there does not appear to be any proffered connection between those opinions "and [the] particular disputed factual issues,"[62] Guntharp's opinions on those issues do not fit the case and will be excluded.

However, the same does not hold true for information regarding Cleveland Brothers' safety records and qualifications. Certainly, the fact that Cleveland Brothers had only a conditional safety rating may be relevant to Guntharp's opinion that Cleveland Brothers had negligently implemented training programs in general, and his opinion as to how those training programs were allegedly negligently applied

---

[61] *Id.* at 16-21. Cleveland Brothers also seeks to preclude Guntharp from testifying that Bryson was not qualified by Cleveland Brothers to drive a service truck from 2006 to 2010, Doc. 89 at 19-20, and Vorobey agrees to instruct Guntharp not to offer such an opinion at trial. Doc. 95 at 3. Consequently, Cleveland Brothers motion will be granted as to this point.

[62] *Paoli II*, 35 F.3d at 743.

to Bryson, specifically. It is therefore possible that this fact, and Guntharp's opinion that incorporates this fact, may fit the case. The Court is accordingly hesitant to exclude that information at this stage of the proceedings, and will conditionally deny Cleveland Brothers' motion. Such denial is without prejudice to Cleveland Brothers' right to again raise this issue at trial should Guntharp fail to connect this fact with his opinion that Cleveland Brothers negligently trained its drivers, including Bryson.[63]

### 3.    Evidence Related to Affirmative Defense of Punitive Damages

Cleveland Brothers next seeks to preclude any evidence, reference, or argument at trial related to the punitive damages claims contained in the complaints in the Underlying Actions.[64] Cleveland Brothers asserts that neither Vorobey nor Miller have produced any evidence that any of the settlements in the Underlying Actions were related to punitive damages and, therefore, any such claims are irrelevant to the issue of contribution in this matter—particularly since any assertion in this matter related to punitive damages is an affirmative defense for which Defendants bear the burden of proof.[65]

---

[63]  Of course, as discussed previously and conceded by Vorobey, Guntharp may not opine that it is unusual for a company to continue operation for 28 years without attempting to improve its safety rating, that Cleveland Brothers continued to operate with the same distain for public safety that it exhibited in 1990, or that Cleveland Brothers training efforts were "halfhearted at best."

[64]  Doc. 78.

[65]  Doc. 79 at 6-8.

Vorobey responds that, as proof that "punitive damages was a consideration/portion of the settlement paid by Cleveland Brothers" in the Underlying Actions, "Vorobey relies upon the fact that the amounts of these settlements [were] somewhat large/enhanced, suggesting that punitive damages were a consideration . . . [and] the fact that Cleveland Brothers settled the [Underlying Actions] without going to Trial, and without the participation of other parties whom Cleveland Brothers has deemed liable for this accident is suggestive of" punitive damages having been a part of the settlements.[66] Finally, Vorobey asserts that he is not required to sustain his burden of proof as to this affirmative defense prior to trial.[67]

The Court agrees that the "evidence" upon which Vorobey relies to support a claim that punitive damages constituted part of the settlements in the Underlying Actions is woefully insufficient. The fact that the settlements were "somewhat large/enhanced" is not necessarily indicative of punitive damages but may, instead, simply reflect the fact that individuals both died and were quite seriously injured in the Southbound Accident. This further assumes without proof that the settlements were in fact "enhanced." And the fact that Vorobey was not invited to participate in the settlement discussion has absolutely no bearing on whether those settlements involved punitive damages, particularly since Cleveland Brothers asserts that the

---

[66]   Doc. 96 at 2.
[67]   *Id.* at 3.

attorneys involved in the Underlying Actions will testify that punitive damages were not part of the settlements, and Vorobey apparently spoke with the mediator in those settlements and left without any evidence from her to support the notion that punitive damages were part of the settlement.[68]

Moreover, Vorobey is incorrect in asserting that he need not produce any evidence to support his affirmative defense prior to trial, even if the plaintiff has challenged the strength or veracity of that evidence. To the contrary, the Third Circuit has repeatedly held that "[t]he tests for precluding a defendant from offering a defense and for denying an instruction on a particular defense are the same: whether the evidence presented (or proffered) is legally sufficient to support the defense"[69] This rule applies even when a movant seeks, prior to trial, in a motion *in limine* to preclude the introduction of any evidence to support the affirmative defense.[70]

The evidence that Vorobey has referenced is insufficient as a matter of law to support any claim that punitive damages were included as part of the settlements in the Underlying Actions, and the Court will therefore conditionally grant Cleveland Brothers' motion *in limine*. Denial is, however, without prejudice to Vorobey's

---

[68]   Doc. 123 at 2-3.
[69]   *United States v. Taylor*, 686 F.3d 182, 194 (3d Cir. 2012).
[70]   *Id.* at 194-95; *see also United States v. Miller*, 59 F.3d 417, 421-22 (3d Cir. 1995) (holding that the district court did not err in granting a pretrial motion *in limine* to bar the defendant from producing evidence to support her affirmative defense).

ability to seek reconsideration of this issue at trial, should he proffer additional evidence in support of his assertion that the settlements involved punitive damages.

### 4.    Post-Accident Preventability Determinations

Cleveland Brothers next seeks to exclude from trial any evidence or reference to Cleveland Brothers failing to perform a preventability determination after a 2013 accident or the Southbound Accident, as such evidence is inadmissible pursuant to 49 U.S.C. § 504(c) and, in any event, any relevance would be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. [71] Vorobey concedes that evidence or reference to post-accident preventability determinations should not be presented at trial.[72] Consequently, the Court will grant this motion *in limine*.

### 5.    Bryson's Prior Traffic Citation and Guilty Plea

Cleveland Brothers next seeks to preclude any evidence or mention of Bryson's citation, and subsequent guilty plea, for careless driving resulting in death[73] following the Southbound Accident.[74] Cleveland Brothers argues that, because it concedes that Bryson was negligent, and because the citation was for careless driving rather than reckless driving, such evidence is not relevant to this case.[75] Even if such evidence were relevant, Cleveland Brothers asserts that any probative value

---

[71]  Docs. 80, 81.
[72]  Doc. 94 at 1.
[73]  75 Pa. Stat. and Cons. Stat. § 3714(b).
[74]  Docs. 82, 83.
[75]  Doc. 83 at 5-6.

is substantially outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury, as it would confuse the jury as to the relevant standard of proof for recklessness, and would serve only to suggest to the jury that, because Bryson pled guilty to a criminal offense, punitive damages in the Underlying Actions must have been appropriate.[76]

Vorobey in turn contends that Bryson's traffic violation constitutes negligence per se; the violation is therefore relevant, since Bryson's conduct during the accident is critical to this case, and any prejudice may be mitigated by having Bryson testify as to why he pled guilty to the offense.[77] Vorobey further asserts that, even though Cleveland Brothers admits that Bryson was negligent in the Southbound Accident, it "seems inconsistent that if Mr. Bryson were only partially responsible for the happening of this accident, that he would plead guilty to the offense of Careless Driving."[78]

As an initial matter, the proffered evidence has some relevance, as Bryson's relative negligence and culpability as compared to Vorobey's possible negligence would be central to any damages portion of this case. However, because Cleveland Brothers concedes that Bryson was negligent, and that it is vicariously liable for that

---

[76] *Id.* at 6-7.
[77] Doc. 93 at 2-4.
[78] *Id.* at 4. The Court finds nothing inconsistent in such a plea; an individual may be guilty of careless driving without being the sole cause of an accident.

negligence,[79] the probative value of Bryson's guilty plea is minimal, as it would only tend to establish his negligence, and not the relative degree of negligence.

Given the minimal probative value of any evidence related to Bryson's guilty plea for careless driving, the Court concludes that such evidence should be excluded from trial. As discussed previously, "relevant evidence may be excluded 'if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'"[80] Here, what little probative value the challenged evidence possesses is substantially outweighed by the danger of unfair prejudice and wasting time.

As to unfair prejudice, evidence related to the guilty plea would tend to suggest to a jury that, because Bryson committed a criminal offense, he may bear sole responsibility for the Southbound Accident, and therefore only Cleveland Brothers should bear responsibility for paying out the settlements. With concern to wasting time, presenting evidence that Bryson pled guilty to a criminal traffic offense would necessitate—as Vorobey acknowledges—that Cleveland Brothers explain why Bryson entered a guilty plea, and would also require that it explain what a criminal offense is, how it differs from more serious offenses, and what the specific offense was to which Bryson pled guilty, among other things. This would

---

[79]  *E.g.,* Doc. 114 at 1.
[80]  *GN Netcom, Inc.*, 930 F.3d at 85 (quoting Fed. R. Evid. 403 (ellipsis omitted)).

unnecessarily complicate trial and waste time. Given how little relevance the fact of Bryson's guilty plea has, such prejudice and wasting time substantially outweighs any relevance, and the challenged evidence must be excluded.[81]

### 6.     Bryson's Prior Cellphone Use While Driving

Next, Cleveland Brothers argues that any evidence or reference to Bryson's prior cellphone usage while driving should be excluded from trial, since such prior usage is not relevant to whether Cleveland Brothers or Bryson were reckless or what caused the Southbound Accident, and any relevance would be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.[82] Vorobey concedes that evidence of, or reference to, Bryson's prior cellphone use while driving should not be presented at trial.[83] Consequently, the Court will grant this motion *in limine*.

---

[81]  Vorobey primarily relies on the late Honorable A. Richard Caputo's decision in *Allen v. Fletcher*, No. 3:07-CV-722, 2009 WL 3103828 (M.D. Pa. Sept. 24, 2009), to argue that evidence related to Bryson's guilty plea is admissible. Doc. 93 at 2-4. However, that matter is easily distinguishable. There, the plaintiffs alleged that the defendant acted negligently when driving his truck, and the matter was proceeding to trial on that issue, meaning that the defendant did not concede that he had acted negligently. *Id.* at *1. Because the defendant did not concede negligence, such a fact was central to the trial, and a guilty plea to a criminal offense that indicated negligence on the part of the defendant was highly relevant. *Id.* at *2. Because in *Fletcher* the evidence was highly relevant, such relevance was not outweighed by the danger of prejudice or wasting time, unlike in this matter where Bryson's guilty plea holds little probative value.

[82]  Docs. 84, 85.

[83]  Doc. 97 at 1.

### 7.    Bryson's Traffic Accident in 2013

Lastly, Cleveland Brothers moves to exclude from trial evidence of Bryson's prior traffic accident in 2013 (the "2013 Accident").[84] Cleveland Brothers contends that Vorobey cannot demonstrate that the 2013 Accident and Southbound Accident are substantially similar, and therefore evidence of the 2013 Accident is not admissible.[85] Even if similar and relevant, Cleveland Brothers asserts that such evidence is unfairly prejudicial and would result in a mini-trial regarding the 2013 Accident, and such evidence should therefore be excluded.[86] Vorobey responds that the two accidents are quite similar and involved the same driver, who was employed by the same company, becoming distracted and rear-ending vehicles on Route 15.[87]

As an initial matter, although Cleveland Brothers asserts that Vorobey must demonstrate substantial similarity between the accidents, the Court disagrees. Courts, including this Court, have routinely held that in certain circumstances for evidence of prior accidents to be admissible, those accident must be "substantially similar" to the accident at issue in the present case.[88] However, those circumstances have generally been limited to instances where the prior accidents are admitted to

---

[84]   Docs. 86, 87.
[85]   Doc. 87 at 4-7.
[86]   *Id.* at 7.
[87]   Doc. 98.
[88]   *See, e.g., Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 147-48 (M.D. Pa. 2021); *Van Sant v. Choice Hotels Int'l, Inc.*, No. 1:17-CV-01552, 2019 WL 13207583, at *5 (M.D. Pa. Nov. 18, 2019); *Nat'l Freight, Inc. v. Se. Pa. Transp. Auth.*, No. CIV.A. 87-3334, 1988 WL 108408, at *2 (E.D. Pa. Oct. 12, 1988).

demonstrate the "existence and knowledge of dangerous conditions" and "[k]nowledge of the likelihood of injury,"[89] "to demonstrate that a party possessed notice of a particular risk of harm,"[90] or in product defect cases "to show notice, causation, or the existence of a defect."[91]

Those issue are not present in this case. More importantly, the logic for implementing stringent similarity requirements between accidents is not present here. Substantial similarity is required when using evidence of a prior accident to demonstrate the existence and knowledge of dangerous conditions or that a party possessed notice of a particular risk of harm because, absent substantial similarity, there is simply no way that the prior accident could have "alerted the defendant to a danger that found fruition in the later injury."[92] Similarly, in product defect cases, notice of the existence of a defective product or proof "that a defendant was aware of a possible problem"[93] would necessarily require that the accident—and thus the defect that allegedly caused the accident—must have been substantially similar.

Here, however, evidence related to the 2013 Accident would not be used to show notice, causation, or the existence of a defect but would instead presumably be used to show that Cleveland Brothers failed to properly discipline or train Bryson after the 2013 Accident, which then contributed to the Southbound Accident.

---

[89] *Nat'l Freight, Inc.*, 1988 WL 108408 at *2.
[90] *Van Sant*, 2019 WL 13207583 at *5.
[91] *Sikkelee*, 522 F. Supp. 3d at 147-48.
[92] *Van Sant*, 2019 WL 13207583 at *5.
[93] *Sikkelee*, 522 F. Supp. 3d at 150.

Substantial similarity—for example, that accidents occurred at substantially the same place and close in time—does not have the same impact on any connection between the accidents at issue here as it would in the circumstances described above. Rather, the Court concludes that Vorobey need only demonstrate sufficient similarity between the accidents such that any training that should allegedly have been given to Bryson by Cleveland Brothers following the 2013 Accident could have potentially avoided the Southbound Accident.

Using that test as a guideline, the Court determines that such sufficient similarity exists here. As Vorobey correctly notes, both accidents: involved Bryson acting in his capacity as an employee of Cleveland Brothers; occurred on Route 15; involved Bryson rear-ending another vehicle with his truck; and were caused because Bryson was distracted in some capacity.[94] Due to these similarities, the 2013 Accident is highly relevant to understanding Cleveland Brothers' potential level of negligence and culpability in the Southbound Accident—if it failed to properly train Bryson following the 2013 Accident. Of course, admitting this evidence will waste some time since Cleveland Brothers may feel compelled to present evidence explaining the 2013 Accident, and it would undoubtedly cause some prejudice to Cleveland Brothers. However, given the relevance of this evidence, the Court cannot conclude that any risk of prejudice or wasting time "substantially outweigh[s]"[95] the

---

[94] Doc. 98 at 1-2.
[95] Fed. R. Evid. 403.

probative value of this evidence, and Cleveland Brothers' motion *in limine* will be denied.[96]

### B.   Vorobey's Motion *in Limine*

On January 12, 2023, Vorobey filed a motion *in limine* seeking to preclude the introduction of three affidavits from the plaintiffs' attorneys in the Underlying Actions—Jamie J. Anzalone, Esq., Thomas C. Marshall, Esq., and Jeffrey C. Dohrmann, Esq. (collectively the "Attorney-Witnesses")—wherein those attorneys opine, inter alia, that the settlements in the Underlying Actions were fair and reasonable.[97] Vorobey contends that these affidavits are expert reports that were furnished long after the deadline to submit expert reports and shortly before trial, and the affidavits and testimony of the Attorney-Witnesses should therefore be excluded.[98]

Cleveland Brothers argues that it was not required to submit written expert reports for the Attorney-Witnesses because such reports are not required under Federal Rule of Civil Procedure 26(a)(2)(B), as these individuals were not retained specifically to provide expert testimony in this case, nor do their duties involve regularly providing expert testimony.[99] Consequently, Cleveland Brothers asserts that it timely submitted their affidavits pursuant to Rule 26(a)(2)(D)(i).[100] Finally,

---

[96]   To mitigate any prejudice, the Court will issue an appropriate limiting instruction, if requested.
[97]   Docs. 121, 122.
[98]   Doc. 122 at 6-8.
[99]   Doc. 123 at 4-8.
[100]   *Id.* at 8-9.

Cleveland Brothers notes that the expert testimony was timely disclosed and Vorobey was aware of the Attorney-Witnesses' proposed testimony and therefore has not been prejudiced by the purportedly late production of the affidavits.[101]

As an initial matter, the Court finds Vorobey's motion to be untimely to the extent that it seeks to exclude any trial testimony from the Attorney-Witnesses. Vorobey's motion *in limine* was filed on January 12, 2023, while motions *in limine* were due on or before January 10, 2022.[102] Although trial was delayed due to the death of one of Cleveland Brothers' expert witnesses, no new deadline for motions *in limine* was set, as the previous deadline had already lapsed by the time trial was postponed.[103] The deadline to file motions *in limine* therefore passed more than one year prior to Vorobey filing this motion *in limine*. Vorobey asserts that he did not receive the Attorney-Witnesses' affidavits until December 13, 2022 [104] and, therefore, to the extent that Vorobey is only seeking to preclude the introduction of those affidavits at trial, the Court will not find the motion *in limine* untimely, as the motion responded promptly to the production of those affidavits.

However, to the extent that Vorobey seeks to preclude all testimony from the Attorney-Witnesses, the motion should have been filed more than one year ago. Cleveland Brothers disclosed that the Attorney-Witnesses were potential expert

---

[101] *Id.* at 9-10.
[102] Doc. 72.
[103] Doc. 118.
[104] Doc. 122 at 2.

witnesses in the joint case management plan filed on April 17, 2020.[105] Cleveland Brothers further asserts that it filed its Federal Rule of Civil Procedure 26(a)(1) disclosures less than one month later, and again identified the Attorney-Witnesses as potential expert witnesses.[106] It is therefore apparent that Vorobey knew that the Attorney-Witnesses were potential experts and, to the extent that Vorobey believed Cleveland Brothers had not timely submitted expert reports for them such that their testimony should be excluded, he knew the basis of that motion prior to the motions *in limine* deadline.

Under the Federal Rules of Civil Procedure, a district court may establish deadlines for parties to file motions, including motions *in limine*.[107] Federal Rule of Civil Procedure 16 states that scheduling orders should be modified only for cause.[108] This Court has discretion to enforce its own orders,[109] and therefore may dismiss without consideration untimely motions *in limine* filed without explanation and without a request for leave of court.[110] Timeliness is paramount for all legal

---

[105]  Doc. 26 at 9-10.

[106]  Doc. 123 at 2; Doc. 123-1 at 3-4.

[107]  Fed. R. Civ. P. 16(b).

[108]  *Id*.

[109]  *See* Fed. R. Civ. P. 16(d). *Cf. Taylor v. Shields*, 744 F. App'x. 83, 87 (3d Cir. 2018) (holding that "the trial court was within its discretion under Rule 16(b) of the Federal Rules of Civil Procedure to enforce its scheduling order and therefore deny [the Plaintiff's] *Daubert* motion as untimely").

[110]  *See Northwest Savings Bank and Financial Services v. NS First Street LLC*, 2011 WL 6180874, at *5 (M.D. Pa. Dec. 13, 2011) (striking as untimely a motion *in limine* to exclude expert testimony that was filed "just over a week before trial" and more than a month after "the deadline for motions *in limine* passed" when the defendants "offer[ed] no explanation for the delay" and did not "ask for an extension of time to file").

filings; it is particularly important for objections to expert testimony, as courts have an obligation to evaluate the expert's proposed testimony with care.[111] Vorobey's motion, to the extent that it seeks to exclude the Attorney-Witnesses' testimony—filed more than twelve months after the deadline to submit motions *in limine*—is therefore denied as untimely.

Considering the merits of the motion as it applies to the affidavits, the Court concludes that the affidavits should not be excluded.[112] In accordance with Federal Rule of Civil Procedure Rule 26(a)(2)(A), a party must disclose the identity of any witness it may use at trial to present expert testimony pursuant to Federal Rules of Evidence 702, 703, or 705.[113] Witnesses who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must provide the opposing party with expert reports that detail the opinion they intend to offer and the reasoning for that opinion, along with other information.[114] If a party is not required to produce an expert report for one of their witnesses, the party must state in its Rule 26 disclosures

---

[111]  *Cf. Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001) (explaining that "because *Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction," untimely motions to exclude expert testimony should be considered "only in rare circumstances").

[112]  Even if the motion *in limine* were timely to the extent that it seeks to preclude the Attorney-Witnesses' expert testimony at trial, the motion would still be denied for the reasons explicated below.

[113]  Fed. R. Civ. P. 26(a)(2)(A).

[114]  Fed. R. Civ. P. 26(a)(2)(B).

the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify.[115]

This Court has previously recognized that expert reports are not always necessary where a party's treating medical physician "testif[ies] based on their examination, diagnosis and treatment of a patient."[116] The Court has further noted that "[a] treating physician is not necessarily retained or specially employed to provide expert testimony simply because he or she proffers on causation and prognosis. This conclusion is bolstered by the obvious fact that doctors may need to determine the cause of an injury in order to treat it."[117]

> Other courts have emphasized that expert reports are not required if the
>
> treating physician testifies only as to the care and treatment of his/her patient, [as] the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed. R. Evid. 702, 703 and 705. However, when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed. R. Civ. P. 26(a)(2)(B).[118]

The United States Court of Appeals for the First Circuit has similarly explained that "a party need not identify a witness as an expert so long as the witness played a

---

[115] Fed. R. Civ. P. 26(a)(2)(C).

[116] *Longo v. Hanger Prosthetics & Orthotics, Inc.*, No. 3:12-CV-02445, 2015 WL 915479, at *3 (M.D. Pa. Mar. 3, 2015) (internal quotation marks omitted).

[117] *Id.* (internal quotation marks omitted).

[118] *Logan v. Ill. Cent. R. Co.*, No. 305-CV-902-DRH, 2006 WL 3841593, at *4 (S.D. Ill. Dec. 14, 2006) (internal quotation marks omitted), *affirmed by Logan v. Ill. Cent. R. Co.*, No. 05CV0902 DRH, 2007 WL 30539 (S.D. Ill. Jan. 4, 2007).

personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events."[119]

This limitation is eminently sensible. Where a treating physician cabins his or her testimony only to events and actions undertaken prior to trial, it cannot be said that the physician was "retained or specially employed to provide expert testimony in the case."[120] However, that calculus shifts when the physician offers an opinion that goes beyond what occurred during treatment.

Cleveland Brothers seeks to analogize the Attorney-Witnesses to a treating physician, in that they were not retained for this case specifically to reach a conclusion as to the propriety of the settlements in the Underlying Action but, rather, reached their conclusions based on their participation in the Underlying Actions.[121] The Court agrees that a situation involving an attorney who was retained in a different matter, and seeks to testify as to his or her conduct in that other matter, is analogous to the role of a treating physician who testifies as to any treatment rendered.

The Court further concludes that the Attorney-Witnesses' proposed testimony does not appear to extend beyond the facts made known to them during the course of the Underlying Proceedings and their actions in the Underlying Proceedings.[122]

---

[119] *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113-14 (1st Cir. 2003) (emphasis added).
[120] Fed. R. Civ. P. 26(a)(2)(B).
[121] Doc. 123.
[122] Docs. 122-2, 122-3, 122-4.

The only portion of the proposed testimony that could arguably be considered expert testimony beyond the bounds of facts and actions known to the Attorney-Witnesses in the Underlying Action are their opinions that the settlements were "fair and reasonable."[123] However, it is clear that the Attorney-Witnesses would need to have reached a determination about whether the settlements were fair and reasonable prior to advising their clients about accepting or rejecting those settlement offers. Therefore, reaching such a determination was part of their jobs and any testimony to the effect that the settlements were fair and reasonable would simply be relating the events from the Underlying Actions, and would not mean that the Attorney-Witnesses were "specially retained to develop specific opinion testimony."[124] Cleveland Brothers therefore is not required to submit expert reports for the Attorney-Witnesses.[125]

That conclusion does not end the Court's analysis, however, as, even where a party is not required to provide a report for its expert witnesses, the party must still submit required disclosures that set forth "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" along with "a summary of the facts and opinions to which the witness is expected to

---

[123]  Doc. 122-2 at 7; Doc. 122-3 at 6; Doc. 122-4 at 5-6.

[124]  *Logan*, 2006 WL 3841593 at *4.

[125]  *See also Clark Constr. Grp., Inc. v. Eagle Amalgamated Servs., Inc.*, No. 01-2478, 2007 WL 9710098, at *2 (W.D. Tenn. Nov. 6, 2007) (holding that a party was not required to provide expert reports for two attorneys who would be called "to testify as to the reasonableness of the attorneys' fees").

testify."[126] Absent a court order to the contrary, such disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial."[127]

Here, trial was originally set for May 2, 2022,[128] meaning that the necessary disclosures were due on or before February 1, 2022. However, prior thereto one of Cleveland Brothers' expert witnesses died, and the trial was delayed until March 13, 2023.[129] Based on that trial date, disclosures related to the Attorney-Witnesses were due on or before December 13, 2022. Vorobey acknowledges having received the Attorney-Witnesses' affidavits on December 13, 2022.[130] Those affidavits appear to adequately set forth the subject matter upon which the Attorney-Witnesses will testify, along with the facts and opinions that they will offer, as required by Rule 26(a)(2)(C). [131] Because Cleveland Brothers complied with its disclosure requirements, exclusion of the expert opinions or affidavits is not warranted.

Finally, even if Cleveland Brothers disclosures were deficient, exclusion would still not be appropriate. This Court must evaluate any attempt to exclude expert opinion or evidence based upon late disclosure of the opinion under the "*Pennypack* factors" and consider:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the

---

[126] Fed. R. Civ. P. 26(a)(2)(C).
[127] Fed. R. Civ. P. 26(a)(2)(D).
[128] Doc. 72.
[129] Docs. 73, 92, 109, 118.
[130] Doc. 122 at 2.
[131] *See* Docs. 122-2, 122-3, 122-4.

prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.[132]

A consideration of these factors demonstrates that exclusion is unwarranted. First, there appears to be no prejudice to Vorobey. Cleveland Brothers revealed that it may called the Attorney-Witnesses as expert witnesses in the joint case management plan submitted on April 17, 2020, which gave Vorobey nearly three years' notice of those witnesses.[133] Moreover, it should have been readily apparent to Vorobey why the Attorney-Witnesses would be called in this matter and what general testimony they would offer; if that were not immediately apparent, it would have become apparent when Vorobey spoke with the mediator from the Underlying Actions.[134] Because Vorobey had nearly three years to prepare for the testimony of the Attorney-Witnesses, there is no discernable prejudice here, nor is there any need to cure any prejudice.

Second, given the time that Vorobey had to prepare for any testimony from the Attorney-Witnesses, permitting such testimony would not disrupt the orderly and efficient trial of this case. Third, given that Cleveland Brothers appears to have complied with the dictates of Rule 26(a)(2), the Court discerns no bad faith. Finally, the proffered testimony is of some importance, as it would be highly relevant to two

---

[132] *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-05 (3d Cir. 1977)).
[133] Doc. 26 at 9-10.
[134] *See* Doc. 123 at 3.

of Vorobey's affirmative defenses—that the settlements were not fair and reasonable, and that the settlements included punitive damages in their calculations. Consequently, the Court concludes that, even considering the *Pennypack* factors, the expert testimony should not be excluded,[135] and Vorobey's motion *in limine* will be denied.

## III.   CONCLUSION

In accordance with the above discussion, the motions *in limine* will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[135] *Cf. Longo*, 2015 WL 915479 at *4 (concluding that exclusion was unwarranted as the defendant was "not significantly prejudiced because it had knowledge that Plaintiffs were planning to use at least some of the treating physicians as witnesses when they provided [the defendant] with their initial disclosures" and any prejudice could be mitigated by directing the plaintiffs to submit the required disclosures).